ORIGINAL FILED

APR 21 PM 1:33
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Daniel T. McCloskey (SBN: 191944)
   mccloskeyd@gtlaw.com
2  GREENBERG TRAURIG, LLP
   1900 University Avenue, Fifth Floor
3  East Palo Alto, California 94303
   Telephone: (650) 328-8500
4  Facsimile: (650) 328-8508         **E-filing**

5  Brian A. Carpenter (*pro hac application pending*)
   carpenterb@gtlaw.com
6  GREENBERG TRAURIG, LLP
   1200 Seventeenth Street, Suite 2400
7  Denver, CO 80202
   Telephone: (303) 572-6500
8  Facsimile: (303) 572-6540

9  Attorneys for Plaintiff
   Balanced Body, Inc.

               UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION

                                                          MEJ

BALANCED BODY, INC., a California     Case No. CV 08 2059
Corporation,
                                      COMPLAINT FOR PATENT
                  Plaintiff,          INFRINGEMENT

v.                                    DEMAND FOR JURY TRIAL

PEAK BODY SYSTEMS, INC.,
a Colorado Corporation,

                  Defendant.

   Plaintiff Balanced Body, Inc. ("Balanced Body" or "Plaintiff"), for its Complaint against Defendant Peak Body Systems, Inc. ("Peak" or "Defendant"), alleges as follows:

### Nature of the Action

1.  In this action, Balanced Body seeks injunctive and monetary relief for acts of patent infringement under 35 U.S.C. §§ 1 *et. seq.*.

- 1 -
COMPLAINT

SV 346,281,753v1 4/21/2008

## The Parties

2. Balanced Body is a corporation incorporated under the laws of the State of California with a principal place of business at 8220 Ferguson Avenue, Sacramento, California, 95828.

3. On information and belief, Peak is a corporation incorporated under the laws of the State of Colorado with a principal place of business at 5555 Central Avenue, Suite 200, Boulder, Colorado, 80301.

## Jurisdiction and Venue

4. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Balanced Body is the owner by assignment of United States Patent No. 6,120,425 (the "'425 Patent"), entitled "Exercise Apparatus," which issued on September 19, 2000, a true and correct copy of which is attached as Exhibit A.

6. Peak manufactures, has made, imports, offers for sale, and/or sells exercise equipment, including but not limited to Peak's complete line of reformer equipment, including but not limited to its reformers referred to as the MVe Fitness Reformer and PilateSystem Reformer, each of which infringe one or more claims of the '425 Patent (these and all similar exercise equipment collectively referred to herein as the "Accused Products").

7. Peak has sold and/or is selling or causing to be sold one or more of the Accused Products throughout this country, including in this District. In addition or in the alternative, Peak has sold one or more of the Accused Products outside of this District, which Accused Products are being used in this District.

8. Peak operates a nationally accessible website (https://www.peakpilates.com) that permits California residents to purchase the Accused Products in this District.

9. Peak and/or its distributor(s) have sold one or more of the Accused Products to operators of exercise facilities in this District, which Accused Products are used in gym facilities

located in this District. By the above described acts, Peak is directly infringing and/or inducing and/or contributing to the infringement of one or more claims of the '425 Patent in this District.

10. Peak is a foreign corporation transacting business within the state of California, is causing tortious injury by committing all or part of the tortious acts described herein within the state of California, is causing tortious injury in the state of California by committing all or part of the tortious acts or omissions described herein outside the state of California, or is causing tortious injury by committing all or part of the tortious acts or omissions described herein outside the state of California while regularly conducting or soliciting business or deriving revenue from goods used or consumed or services rendered within the State of California. Therefore, this Court has personal jurisdiction over Peak under the California long-arm statute, Cal. Civ. Proc., § 410.10. Hence, Peak resides in this district under 28 U.S.C. § 1391(c).

11. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

### Intradistrict Assignment

12. Pursuant to Civil L.R. 3-2(c), this Intellectual Property action is exempt from intradistrict assignment.

### General Allegations

13. Balanced Body incorporates by reference paragraphs 1 - 12 set forth above.

14. Peak has made or had made the Accused Products, has imported Accused Products into this country, has used the Accused Products, has sold the Accused Products, and/or offered the Accused Products for sale in this country. Furthermore, Peak has also induced others to use, offer for sale, and/or sell the Accused Products in this country. In addition, Peak is presently conducting these activities and will likely continue these activities.

### Claim for Relief for Patent Infringement

15. Peak has been and is now infringing one or more claims of the '425 Patent by [1] making, having made, importing, using, offering to sell, or selling the patented invention(s), [2] by actively inducing others to make, import, use, offer to sell, or sell the patented invention(s), or [3] by contributing to the manufacture, import, use, sale, or offer for sale the patented invention(s) in the United States.

16. More particularly, without limitation, Peak is now infringing one or more claims of the '425 Patent by making, having made, importing, using, offering to sell, or selling the Accused Products, which embody the patented invention(s) of the '425 Patent, and/or inducing or contributing to the infringement of the '425 Patent by others. Furthermore, these acts by Peak have been willful.

17. Balanced Body has given Peak constructive and/or actual notice of the existence of the '425 Patent and of Peak's infringement. Despite such notice, Peak has and will likely continue to engage in acts of infringement without regard and/or in reckless disregard to the '425 Patent, and will continue to do so unless otherwise enjoined by this Court.

18. Balanced Body has been damaged by the infringing activities of Peak and will be irreparably harmed unless those infringing activities are permanently enjoined by this Court. Balanced Body does not have an adequate remedy at law.

WHEREFORE, Balanced Body requests judgment as follows:

(a) That Peak has infringed one or more claims of the '425 Patent, and that its infringement has been willful;

(b) That Balanced Body has been irreparably harmed by the infringing activities of Peak;

(c) That Peak, its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Products, be preliminarily and permanently enjoined from further infringement of the '425 Patent;

(d) That an accounting be had for the damages caused to Balanced Body by the infringing activities of Peak;

(e) That Balanced Body be awarded damages adequate to compensate for Peak's infringement, which damages shall include lost profits but in no event shall be less than a reasonable royalty for the use made of the inventions of the '425 Patent, including pre- and post-judgment interest and costs, including expenses;

(g) That, once actual damages are assessed, damages so ascertained be trebled under 35 U.S.C. § 284 in view of the willful and deliberate nature of the infringement, and that such damages be awarded to Balanced Body with interest;

- 4 -
COMPLAINT

SV 346,281,753v1 4/21/2008

(h)  That this be declared an exceptional case under 35 U.S.C. § 285 and that Balanced Body be awarded its attorneys' fees; and

(i)  That Balanced Body be awarded such further necessary or proper relief as this Court may deem just.

Dated: April 21, 2008

GREENBERG TRAURIG, LLP

By: /s/

Daniel T. McCloskey
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Plaintiff,
Balanced Body, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: April 21, 2008

GREENBERG TRAURIG, LLP

By: /s/

Daniel T. McCloskey
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Plaintiff,
Balanced Body, Inc.

## FEDERAL RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff Balanced Body, Inc. states that: there is no such corporation.

Dated: April 21, 2008

GREENBERG TRAURIG, LLP

By: _____
Daniel T. McCloskey
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Plaintiff,
Balanced Body, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Balanced Body, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: April 21, 2008

GREENBERG TRAURIG, LLP

By: _____
Daniel T. McCloskey
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Plaintiff,
Balanced Body, Inc.

# Exhibit A

# United States Patent [19]

## Endelman

[11] Patent Number: 6,120,425
[45] Date of Patent: Sep. 19, 2000

[54] **EXERCISE APPARATUS**

[76] Inventor: Ken Endelman, 7500-14th St., Suite 23, Sacramento, Calif. 95820-3539

[21] Appl. No.: 09/176,533

[22] Filed: **Oct. 21, 1998**

[51] Int. Cl.$^7$ ..................................................... A63B 26/00
[52] U.S. Cl. ............................ 482/142; 482/91; 482/96; 482/132; 482/134
[58] Field of Search ........................ 482/142, 72, 71, 482/54, 101, 121–123, 129–130, 135–136, 95, 96, 132–134

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 339,638 | 4/1886 | Goldie | 482/96 |
| D. 354,780 | 1/1995 | Endelman | D21/191 |
| D. 354,781 | 1/1995 | Endelman | D21/191 |
| D. 362,700 | 9/1995 | Breibart et al. | D21/195 |
| 1,621,477 | 3/1927 | Pilates . | |
| 1,738,987 | 12/1929 | Dattilo | 482/130 |
| 1,750,549 | 3/1930 | Thomson et al. . | |
| 1,979,783 | 11/1934 | Williams et al. . | |
| 1,980,036 | 11/1934 | Casler et al. . | |
| 2,733,922 | 2/1956 | Diego | 482/96 |
| 3,261,606 | 7/1966 | Elia et al. . | |
| 3,586,322 | 6/1971 | Kverneland . | |
| 3,770,267 | 11/1973 | McCarthy | 272/58 |
| 3,892,404 | 7/1975 | Martucci | 272/79 R |
| 4,084,815 | 4/1978 | Flannery | 272/119 |
| 4,272,074 | 6/1981 | Sferle | 272/120 |
| 4,383,684 | 5/1983 | Schliep | 272/120 |
| 4,700,945 | 10/1987 | Rader | 272/127 |
| 4,706,953 | 11/1987 | Graham | 272/120 |
| 4,768,776 | 9/1988 | Giannotti | 272/72 |
| 4,884,802 | 12/1989 | Graham | 272/136 |
| 4,911,438 | 3/1990 | Van Straaten | 272/138 |
| 4,974,832 | 12/1990 | Dalebout | 272/72 |
| 5,024,214 | 6/1991 | Hayes | 128/75 |
| 5,066,005 | 11/1991 | Luecke | 272/136 |
| 5,263,913 | 11/1993 | Boren | 482/96 |
| 5,338,278 | 8/1994 | Endelman | 482/142 |
| 5,364,327 | 11/1994 | Graham | 482/122 |
| 5,607,381 | 3/1997 | Endelman | 482/142 |
| 5,653,670 | 8/1997 | Endelman | 482/142 |
| 5,681,249 | 10/1997 | Endelman | 482/142 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1470421 | 1/1967 | France | 482/142 |
| 2625907 | 7/1989 | France | 482/130 |
| 2944599 | 5/1981 | Germany | 482/133 |

*Primary Examiner*—Jerome W. Donnelly
*Assistant Examiner*—Lori Amerson
*Attorney, Agent, or Firm*—John R. Wahl; Merchant & Gould P.C.

[57] **ABSTRACT**

An exercise apparatus comprises a generally rectangular frame having a head end and a foot end and including a pair of spaced apart parallel track members, a movable carriage mounted on the frame for movement along the track members between said head and foot ends against one or more springs connected between the carriage and the foot end of the frame. The carriage has a generally flat upper surface for supporting a user's body. The upper surfaces has a pair of spaced shoulder stops and a head rest extending from the carriage toward the head end. The head end has a cutout portion to permit the head support to extend through the head end so that the carriage can be fully extended to the head end against spring tension. The foot end includes an elastic member, anchor bar and carriage stop assembly to adjustably position the carriage and elastic members on the tracks to accommodate a wide range of user heights. The anchor bar and carriage stop assembly includes an anchor bar support bracket which has a plurality of recesses for receiving ends of the anchor bar, an anchor bar member and a pair of carriage stop members each extending from one end of the anchor bar member along one of the tracks so that the carriage is always spaced from the anchor member by a fixed distance, yet the anchor bar can be spaced various distances from the foot end of the frame.

**22 Claims, 4 Drawing Sheets**





Fig. 1



**Fig. 2**



Fig. 3



Fig. 4



Fig. 5

Fig. 6

| 1 | 2 |

# EXERCISE APPARATUS

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is related to my U.S. Pat. Nos. 5,681,249, 5,338,278, 5,607,381 and 5,653,670, the disclosures of which are incorporated by reference herein in their entirety.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates generally to the field of exercise equipment in which a movable carriage is utilized to at least partially support a user's body, commonly referred to as a "reformer", and more particularly to a reformer having either or both adjustable carriage travel and extended carriage travel.

### 2. Description of the Related Art

Joseph H. Pilates, in U.S. Pat. No. 1,621,477, originally developed the concept of using a wheeled platform carriage connected to a resistance device such as a set of weights in conjunction with a stationary frame to provide a variable resistance against which a user could push with his/her feet or pull with the arms while in a sitting or recumbent position in order to exercise the major muscle groups of the user's trunk, legs and/or arms. Since that time many changes and improvements in the design of such an apparatus were developed by Joseph Pilates, and more recently, have been evolved by his students and others. U.S. Pat. No. 5,066,005 and my patents referred to above are representative of the current state of evolutionary development of these changes that have taken place since 1927.

The current conventional apparatus is commonly referred to as a "reformer" which includes a wheeled platform carriage which rides on a rectangular wooden or metal frame. The carriage is connected to a series of parallel springs or elastic members which are in turn connected to a foot end of the rectangular frame. The carriage rides on parallel rails or tracks mounted to the inside of the longer sides of the rectangular frame. This carriage typically includes a pair of spaced, padded, upright shoulder stops and a head rest at one end to support the shoulders and head of the user when he/she is reclined on the carriage. An adjustable foot bar, foot support, or foot rest against which the user places his/her feet is removably mounted to the foot end of the rectangular frame. A spring support rod is positioned across the foot end between the tracks by a spring support bracket fastened to the frame. The rod typically fits in one of three or four recesses or slots in the support bracket, depending on the size or ability of the user. Alternatively, the spring support rod may be permanently fastened to the frame. The user can then push against the foot rest to move the carriage along the track away from the foot rest against spring tension to exercise the leg and foot muscle groups in accordance with prescribed movement routines. The carriage is prevented from moving close to the foot rest by a stop pin fastened to the top of each track, against which the carriage abuts when the carriage is at rest. The maximum limit of carriage travel is provided by the head rest abutting the end wall of the frame.

U.S. Pat. Nos. 5,338,276, 5,607,381 and 5,681,249 disclose several foot rest arrangements and adjustable head rest assemblies for this type of exercise apparatus. One of the difficulties which the currently available reformers do not optimally address is the capability to optimally adjust the apparatus configuration for those users who are outside the normal range of human frame sizes and flexible abilities. The typical basketball player, for example, is well over 6 feet 6 inches in height. Therefore when such a tall person exercises on a reformer, the carriage may be fully extended toward the head end of the frame before the user has fully extended his legs. The springs may also be overextended at this point in the user's movement, subjecting the user's body to other than optimum resistance during the exercise.

Alternatively, a user may be shorter than the norm such that the distance between the foot rest and the shoulder stops on the carriage is less than optimum when the carriage is at rest on the spring stops along the tracks or rails. Accordingly there is a need for a reformer type of exercise apparatus having an adjustable carriage and spring arrangement to accommodate these extremes in physical body sizes as well as optimally position the carriage with respect to the foot rests for user's within the normal body size range. In addition, there is a need for a reformer type of apparatus which accomodates the range of motion of those individuals who are substantially taller than normal.

## SUMMARY OF THE INVENTION

The present invention addresses the above identified limitations in conventional reformer designs. The present invention is an exercise apparatus which comprises a preferably wheeled carriage having a generally flat top surface. The carriage is movably mounted on parallel track members of a generally rectangular frame which has a head end and a foot end. The carriage has a pair of shoulder stops mounted thereto and a head rest between the shoulder stops that extends outward from the carriage toward the head end of the frame. A plurality of elastic members connected between the foot end and the carriage elastically biases the carriage toward the foot end of the frame. A movable spring anchor bar and carriage stop assembly and a foot rest support is provided at the foot end of the rectangular frame to anchor the elastic members and position the carriage appropriately in relation to the anchor bar.

The spring anchor bar and carriage stop assembly comprises a pair of spaced elongated stop members which ride on the track members. A spring anchor bar extends between the stop members. The spring anchor bar is captured by a pair of spring anchor support brackets each having a plurality of bar receiving recesses therein. Each support bracket is fixed to one of the track members. Each end of the spring anchor bar is rigidly fastened to one of the elongated stop members. The spring anchor bar and carriage stop assembly lies on top of and across the tracks at the foot end of the frame. The assembly may also include a latch mechanism, that can be operated with one hand, to removably secure the assembly to the spring anchor support brackets. One end of each of the stop members acts as a carriage stop which properly maintains the minimum distance between the carriage and the anchor bar regardless of which recess in the support bracket carries the anchor bar. This feature permits the carriage to be optimally positioned on the tracks for small and large users.

The head end of the frame supports a pair of upright pulley support arms and also includes a cutout between the support arms specifically sized to permit passage of the head support on the movable carriage. This cutout in the frame permits the carriage to travel against spring tension the full length of the parallel tracks to accommodate those users who are substantially taller than the normal range of users of the exercise apparatus.

Other objects, features and advantages of the present invention will become apparent from a reading of the

3

following detailed description when taken in conjunction with the accompanying drawing wherein a particular embodiment of the invention is disclosed as an illustrative example.

BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a perspective view of the exercise apparatus in accordance with the present invention with the carriage shown in the retracted position against the carriage stop bars.

FIG. 2 is a perspective view of the exercise apparatus shown in FIG. 1 with the carriage fully extended to the head end of the frame in accordance with one aspect of the present invention.

FIG. 3 is a separate perspective view of one embodiment of an integral foot bar and anchor bar support bracket in accordance with another aspect of the present invention.

FIG. 4. Is a partial plan view of the foot end of the apparatus according to the present invention with the carriage (not shown) extended against spring tension.

FIG. 5 is a sectional view of the apparatus shown in FIG. 4 taken along the line 5—5.

FIG. 6 is a sectional view of the apparatus shown in FIG. 4 taken along the line 6—6 in FIG. 5.

DETAILED DESCRIPTION OF THE INVENTION

An exercise apparatus 10 in accordance with the present invention is shown in a retracted and extended position in FIGS. 1 and 2 respectively. Exercise apparatus 10 comprises a generally rectangular frame 12 having a head end 14 and a foot end 16 and a pair of parallel track or rail members 18. The frame 12 may be a generally rectangular wood frame with the track or rail members 18 fastened to the insides of opposite side walls 20 of the frame 12, or the rail members 18 themselves may constitute the parallel side walls of the frame 12, as in a reformer having a metal tubular frame. The apparatus 10 further comprises a movable carriage 22 slidably or rollably disposed on the track members 18 for movement back and forth on the track members 18 between the head and foot ends 14 and 16 respectively.

The carriage 22 includes a generally flat padded platform 24 for supporting a user's body and has a pair of spaced apart shoulder stops 26 fastened to the upper surface of the platform 24 adjacent the head end of the carriage 22 and a head rest 28 centered between the shoulder stops 26. The head rest 28 may be hinged to the platform 24 such that it may be adjusted between at least a raised and a lowered position. The head rest extends outward from the platform 24 toward the head end of the frame 12. Preferably the carriage 22 has four wheels or rollers (not shown) which support the carriage 22 on the track members 18 for movement back and forth on the track members 18 with minimal friction. A plurality of elastic resistance members, typically springs 30 as shown in the Figures, are hooked to or otherwise fastened between the foot end of the carriage 22 and the foot end 16 of the frame 12 such that the carriage 22 is biased toward the foot end of the frame 12.

A U shaped foot rest bar 32 having a central foot rest portion 34 and two support legs 36 is pivotally mounted to the side walls 20 near the foot end 16 of the frame 12. This foot rest bar 32 is supported above the frame 12 by a U shaped bar support 38 which has a straight portion 40 between parallel leg portions 42 which are in turn pivotally attached to the legs 36 of the foot rest bar 32 at a point between the ends of the legs 36. The central portion 40 of the

4

bar support 38 is sized to rest in a pair of foot rest bar support brackets 44. These support brackets 44 are fastened to the end wall 46 of the frame 12 and each of the foot rest bar support brackets 44 has a series of vertically spaced recesses or slots 48 adapted to receive the central portion 40 of the support 38. Since these slots 48 are spaced vertically, the vertical position of the foot rest portion 34 of the foot rest bar 32 may be varied by repositioning the support 38 into a different slot 48.

Referring now specifically to FIG. 2, another aspect of the present invention is shown. The carriage 22 is shown extended, stretching the springs 30, all the way to the head end 14. The head end 14 has an end wall 50 spacing the two side walls 20 apart. This end wall 50 has an aperture or cutout 52 therethrough permitting the head rest 28 to fit therethrough so that the carriage 22 is fully butted up against the inside of the end wall 50. This cutout 52 permits the carriage 22 to travel 3–6 inches further than with the conventional reformer designs discussed above.

One embodiment of another aspect of the present invention is shown at the foot end 16 in FIG. 2. The springs 30 are attached to an anchor bar and carriage stop assembly 60 on the tracks 18 at the foot end 16. The anchor bar and carriage stop assembly 60 adjustably anchors the springs to an anchor bar 62 at the foot end 16 of the frame 12 and maintains a predetermined minimum distance between the carriage 22 and the anchor bar 62. The anchor bar 62 is preferably an elongated straight bar having a rectangular cross section. Each end of the anchor bar 62 is fastened, preferably by a welded joint, to a carriage stop bar 64 which extends at right angles to the anchor bar 62. Each of the carriage stop bars 64 extends parallel to each other and rests on top of the track members 18 as shown in the plan view of FIG. 4.

The anchor bar 62 is captured in a anchor bar support brackets 66 which are preferably fixedly attached to the tracks 18. Each of the support brackets 66 has a plurality of rectangular notches 68 therein each of which is sized to receive the anchor bar 62. These brackets 66 may be separate structures as is shown in FIGS. 1 and 2. Alternatively, the anchor bar support bracket 66 may be integrally formed with the foot rest support bar support bracket 44 as is separately shown in FIG. 3. In this case the integral bracket would be fastened to both the track 18 and the wall 46.

The anchor bar support bracket may also have a base plate 70 fastened to the track 18 and the bracket 66 in turn fastened to the base plate 70 as is shown in FIGS. 4, 5, and 6. Also, as best shown in FIG. 4, the anchor bar 62 is preferably fastened to a mid portion of the stop bar 64. However, it may alternatively be fastened to the rear end of the stop bar 64 so that the anchor bar 62 may be positioned in a slot 68 directly beneath the support bracket 44 at the end wall 46. As is best shown in FIGS. 5 and 6, the assembly 60 also includes a latching mechanism 80 for ensuring positive engagement and retention of the anchor bar 62 in the notches 68 at all times during which a user may be exercising on the apparatus 10. Many configurations of latching mechanisms are possible. One arrangement is shown as being exemplary. The latching mechanism 80 preferably comprises an elongated latch handle 82 which has parallel threaded ends 84 bent at right angles to the handle 82 and extending through vertical apertures through the anchor bar 62 adjacent each end of the anchor bar 62. A latch bar 86 extends between the tracks 18 under the anchor bar 62 and is slidably fastened to the threaded ends 84. The latch bar 86 is long enough so that its ends engage the undersides of the base plates 70. A coil spring 88 is positioned on each of the threaded ends 84 and is captured between the latch bar 86 and a nut 90 threaded

5

onto each of the threaded ends 84. The coil springs 88 bias the latch plate toward the anchor bar 62 and in turn provide a spring bias on the anchor bar 62 into the recesses or notches 68 in the support bracket 66.

The springs 30 each have a ring at the rear end which can be slipped onto one of two different anchors 92, depending on the spring tension desired on the carriage 22 when the carriage is at rest against the ends of the stop bars 64. The anchor bar 62 has preferably five anchor hooks 92 spaced apart along one side 94 facing the carriage 22. Another series of five preferably spool shaped posts or hook anchors 93 are fastened to the upper side 96 of the anchor bar 62. This arrangement provides an adjustment between a relaxed attachment for the springs, engaging the hooks 92 on the side 94 facing the carriage 22 and affording a small bias when engaging the anchors 93 on the upper side 96. In either configuration, the position of the anchor bar and carriage stop bar, along with the carriage 22 may be changed by simply lifting up the handle 82 and sliding the assemblage to another slot 66. In this way the carriage position relative to the foot rest 32 may be changed independently and without changing the tension on the springs 30. Further, with the anchor arrangement in accordance with the present invention, the anchor bar 62 is constrained from any rotation. As can be seen in FIGS. 5 and 6, the base plates 70 also have a stop 71 projecting from the underside inner corners to prevent a user from inadvertently sliding the anchor bar 62 too far toward the head end 14 and thus disengaging the latch bar 86.

The present invention may be practiced otherwise than as specifically described above. Many changes, alternatives, variations, and equivalents to the various structures shown and described will be apparent to one skilled in the art. For example, the anchor bar and carriage stop assembly may be designed for use with a tubular steel apparatus as is disclosed in U.S. Pat. Nos. 5,607,381 and 5,338,278. In this instance, the tracks are tubular frame rails and the carriage stop bars would be shaped to ride on the tubular parallel frame rails. The anchor bar support bracket would similarly be shaped to be attached in a fixed position on the tubular frame rails. The anchor bar 62 and carriage stop bar 64 may have other than rectangular cross sections as shown. These members may be round and may be alternately fashioned from a single piece of material. Similarly, the foot rest 32 and the foot rest support 38 may be made other than as specifically shown and described. The anchors 92 anchor hooks 92 and anchors may be cap posts, hooks, rings, or other appropriately shaped members designed to receive or attach to one end of each of the springs 30. Alternatively, various other types of elastic resistance elements such as elastic cords may be substituted for springs 30. The carriage 22 may ride in a pair of C shaped channel tracks. Accordingly, the invention may be practiced other than as specifically described and shown herein with reference to the illustrated embodiments. The present invention is not intended to be limited to the particular embodiments illustrated but is intended to cover all such alternatives, modifications, and equivalents as may be included within the spirit and broad scope of the invention as defined by the following claims. All patents, patent applications, and printed publications referred to herein are hereby incorporated by reference in their entirety.

What is claimed is:

1. An exercise apparatus comprising:
   a generally rectangular frame having a head end, a foot end and a pair of spaced apart parallel track members therebetween;
   a movable carriage mounted on said frame for movement along said track members between said head and foot

6

ends, said carriage having a generally flat upper surface, a pair of spaced shoulder stops mounted to said upper surface and a head rest extending toward said head end from said upper surface of said carriage;
   a plurality of elongated elastic members extending between said carriage and said foot end of said frame;
   a foot support assembly mounted to said frame near said foot end; and
   a movable elastic member anchor bar and carriage stop assembly mounted at said foot end of said frame for adjustably anchoring said plurality of elastic members at different distance positions from said foot end of said frame while maintaining a predetermined minimum distance between said carriage and said anchor bar at each of said positions.

2. The exercise apparatus according to claim 5 further comprising said head end of said frame having a central cutout through said head end of said frame sized to pass a portion of said head rest therethrough when said carriage is moved to said head end of said frame.

3. The exercise apparatus according to claim 1 wherein said head end of said rectangular frame comprises a vertical laterally extending wall between said parallel track members and a pair of spaced upright support members fastened to said wall.

4. The apparatus according to claim 3 wherein said cutout is a generally U shaped channel through said vertical wall.

5. The apparatus according to claim 4 wherein said cutout is centered along an upper edge of said vertical wall of said head end.

6. The apparatus according to claim 5 wherein said anchor bar and carriage stop assembly comprises a pair of anchor bar support brackets each fastened to said frame adjacent one of said tracks.

7. The apparatus according to claim 6 wherein said assembly includes an elongated anchor bar having an elongated carriage stop bar secured to each end of said anchor bar.

8. The apparatus according to claim 7 wherein said anchor bar has a generally rectangular cross section, and has a top side and a front side, said front side facing said carriage when said anchor bar is mounted at said foot end, and a plurality of spring anchors fastened to each of said front side and said top side.

9. The apparatus according to claim 7 wherein each of said carriage stop bars is welded to said anchor bar.

10. The apparatus according to claim 7 wherein said carriage stop bars are parallel to each other.

11. The apparatus according to claim 6 wherein said anchor bar support bracket is an L shaped member having a long leg and a short leg, each leg having a plurality of recesses therein.

12. The apparatus according to claim 11 wherein said assembly includes an elongated anchor bar having an elongated carriage stop bar secured to each end of said anchor bar.

13. The apparatus according to claim 12 wherein said anchor bar has a generally rectangular cross section, and has a top side and a front side, said front side facing said carriage when said anchor bar is mounted at said foot end, and a plurality of spring anchors fastened to each of said front side and said top side.

14. The apparatus according to claim 12 wherein each of said carriage stop bars is welded to said anchor bar.

15. The apparatus according to claim 12 wherein said carriage stop bars extend parallel to each other.

16. The apparatus according to claim 8 wherein each support bracket has a plurality of rectangular recesses along

6,120,425

7

its length extending along said track when said bracket is mounted alongside said track.

17. The apparatus according to claim 5 further comprising a latching mechanism fastened to said anchor bar and carriage stop assembly for releasably latching said assembly in predetermined positions along said track members.

18. The apparatus according to claim 17 wherein said assembly comprises a pair of anchor bar support brackets fastened to said frame, an anchor bar, and a pair of elongated carriage stop members fastened to opposite ends of said anchor bar, wherein said latching mechanism releasably engages said brackets to retain said anchor bar in one of said predetermined positions.

19. In an exercise apparatus comprising:
- a generally rectangular frame having a head end, a foot end and a pair of spaced apart parallel track members therebetween;
- a movable carriage mounted on said frame for movement along said track members between said head and foot ends;
- a plurality of elongated elastic members extending between said carriage and said foot end of said frame; and
- a movable elastic member anchor bar and carriage stop assembly mounted at said foot end of said frame for adjustably anchoring said plurality of elastic members at different distance positions from said foot end of said frame while maintaining a predetermined minimum distance between said carriage and said anchor bar at each of said positions comprising:
  - a pair of anchor bar support brackets each having a plurality of recesses therein, each fastened to said foot end adjacent one of said parallel track members; and
  - an elongated anchor bar member having opposite ends and a carriage stop bar fastened at right angles to said anchor bar member at each of said ends, wherein said anchor bar member ends are adapted to engage said recesses in said support brackets and said stop bars extend along said track members toward said carriage and operably engage said carriage to maintain said minimum distance.

20. The apparatus according to claim 19 wherein said assembly further comprises a latch mechanism including a latch member extending along said anchor bar engaging a portion of said bracket to releasably retain said anchor bar in said recesses.

21. The apparatus according to claim 20 wherein said latch mechanism further comprises a latch handle bar extending above and parallel to said anchor bar for lifting said anchor bar out of said recesses to change position of said anchor bar and carriage stop bars in said support bracket.

22. The apparatus according to claim 21 wherein said latch member is spring biased toward said anchor bar.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 6,120,425
DATED        : September 19, 2000
INVENTOR(S)  : Endelman

Page 1 of 1

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 6,
Lines 16 and 30, delete "5" and insert -- 1 -- therefore.
Line 20, delete "1" and insert -- 2 -- therefore.

Column 7,
Line 3, delete "5" and insert -- 1 -- therefore.

Signed and Sealed this

Sixth Day of July, 2004

JON W. DUDAS
*Acting Director of the United States Patent and Trademark Office*